UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES E. WILBON,

      Plaintiff

vs.                                                          CASE NO: 2:04-CV-00296-VMC-SPC

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

### REPORT AND RECOMMENDATION[1]

      This matter comes before the Court on the Plaintiff James E. Wilbon's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance ((Doc. #1 ) filed on May 27, 2004. On December 20, 2004, the Plaintiff filed a Memorandum in Opposition to the Commissioner's Decision (Doc. #12). Subsequently, the Commissioner filed a response on January 18, 2005. (Doc. #13). Thus, the motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

1

## **BACKGROUND**

*Procedural History*

The Plaintiff filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 6, 1989 alleging disability since January 15, 1989. (Tr. 21). These claims were denied initially and the Plaintiff did not file a request for reconsideration. (Tr. 21). The Plaintiff filed a second application for SSI on November 1, 1989 and an application for DIB on December 31, 1989. The applications were denied initially and upon reconsideration. (Tr. 21). The Plaintiff requested a hearing which resulted in an unfavorable decision. (Tr. 21). The Plaintiff requested review which was denied by the Appeals Council. (Tr. 21).

Subsequently, the Plaintiff filed an application for disability, DIB and SSI on March 3, 1992 alleging a disability onset date of March 16, 1991. (Tr. 21, 362). The application was denied initially and upon reconsideration. (Tr. 21, 362). The Plaintiff requested a hearing which was held on June 1, 1993. The hearing resulted in an unfavorable decision. (Tr. 21, 362). The Plaintiff appealed and the Appeals Council remanded the case for further review. (Tr. 21, 362). A second hearing was held on January 18, 1995 which resulted in an unfavorable decision. (Tr. 22, 362).

Upon appeal and review by the Appeals Council, the case was remanded a second time. (Tr. 362). A third hearing was held on May 29, 1998 resulting in an unfavorable decision. (Tr. 362). While the request for review was still pending, the Plaintiff filed another application for SSI on January 6, 2000, alleging a disability onset date of January 4, 1990. (Tr. 363). Initially, the Plaintiff was found disabled as of January 1, 2000. (Tr. 363).

On June 6, 2000, the Plaintiff previous claim was denied review by the Appeals Council (Tr. 363). As a result, the Plaintiff filed a complaint in the United States District Court for the Middle

District of Florida. (Tr. 363). On May 31, 2001, the Court remanded the case for further proceedings based upon the Commissioner's request for further development and reevaluation. (Tr. 363). A fourth hearing was held before the Honorable H. Allen Wagner on January 10, 2002. (Tr. 363). The issue before the Court was whether the Plaintiff is entitled to benefits prior to June 30, 1991 and whether the Plaintiff was under a disability according to Section 1614(a)(3)(A) of the Social Security Act prior to January 1, 2000.

On February 22, 2002, the ALJ determined that during the period under review, March 16, 1991 through December 31, 1999, the Plaintiff retained the residual functional capacity to perform a wide range of work at all exertional levels. The decision of the Commissioner became the final decision and thus, this case is ripe for judicial review.

### *Plaintiff's History*

The Plaintiff alleges a disability onset date of March 16, 1991 due to mental retardation, peptic ulcer disease, shortness of breath, and black outs. (Tr. 367). The Plaintiff was born on May 28, 1947, making him fifty-three (53) years of age at the time of the last hearing and forty-three (43) on the alleged disability onset date. (Tr. 384). He has a fifth grade education and a past work history of a construction worker, cement mason, cement mason apprentice, plasterer, and plasterer apprentice. (Tr. 364).

### *Medical History*

The Plaintiff alleges diability from mental retardation, peptic ulcer disease, acute pancreatis, blackouts, and shortness of breath. The Plaintiff has not engaged in substantial gainful activity since March 16, 1991.

The medical records reveal that Plaintiff had an episode of chest pain in June

1991. (Tr. 189). The exercise stress test and chest x-ray was normal. (Tr. 191, 214). Pulmonary function testing revealed mild airway obstruction. (Tr. 217). He received periodic treatment for an ulcer and asthma (Tr. 228).

The Plaintiff was examined by Dr. George Mestas for the Florida Office of Disability Determination with a report dated May 19, 1992. (Tr. 244). Upon examination, Dr. Mestes stated that the Plaintiff was well developed, quite muscular and very flexible. (Tr. 244-245). Vital signs and cardiac examination were normal. (Tr. 245-246). Plaintiff showed full range of motion with all extremities, had normal gait, no motor deficits or atrophy and no inflammatory arthritis. (Tr. 245-246).

On August 3,1992, Plaintiff was seen by Dr. Paul A. Rosete, Ph.D., for a consultative evaluation with mental status examination. (Tr. 248). Dr. Rosete estimated that Plaintiff's intellectual functioning was between the mentally deficient and borderline range. He reported poor attention and concentration and diagnosed Plaintiff with anxiety disorder. (Tr. 248-249).

On February 25, 1993, Plaintiff underwent an extensive psychological evaluation by Suzanne S. Rosen, Ph.D. (Tr. 251), The Plaintiff was administered the Weschler Adult Intelligence Scale- revised (WAIS-R). (Tr. 251). The Plaintiff obtained full scale and verbal IQ scores of 68 and a performance IQ score of 70. (Tr. 253). Dr. Rosen stated that these IQ scores appeared to be a fair estimate of Plaintiffs cognitive capacity. (Tr. 254). Additionally, Dr. Rosen noted that the test used was one which would maximize his performance, rather than detract. (Tr. 254). Additional psychological testing was "highly suggestive of brain damage." (Tr. 257). Dr. Rosen also noted that Plaintiffs slow performance on the Digit Symbol Memory Test signifies evidence of extreme psychomotor slowing. (Tr. 255). The Plaintiff's performance was slow and thus, Dr. Rosen to stated

4

that Plaintiff is definitely cognitively impaired. (Tr. 255).

On February 17, 1998, Plaintiff was seen by Dr. Judith S. Sims, Ph.D., for a psychological evaluation. (Tr. 335). Dr. Sims stated that Plaintiff's consistency of IQ scores and his vagueness and digression suggested cortical damage. {Tr. 337). Dr. Sims opined that the Plaintiff had mild mental retardation. (Tr. 337).

On May 19, 1998, Plaintiff was seen by Bruce J. Crowell, Ph.D., for a psychological evaluation referred by Plaintiff's Counsel. (Tr. 348). Dr. Crowell diagnosed Plaintiff with mild mental retardation and leg, knee and neck instability. (Tr. 350). Dr. Crowell did not conduct a physical examination. (Tr. 349). Dr. Crowell also conducted a Weshler Adult Intelligence Scale-111, which showed that Plaintiff had a verbal IQ of 54, a performance IQ of 65, and a full scale IQ of 55. (Tr. 349). Dr. Crowell also stated that there was no significant difference between the Verbal and Performance Scales, indicating that his full scale IQ is a valid and reliable indicator of Plaintiffs overall intellectual level which is in the mild range of mental retardation. (Tr. 350).

Dr. Kenneth A. Berdick examined the Plaintiff and issued a report dated May 11, 2000. (Tr. 473). The Plaintiff was intoxicated and admitted that he drank heavily and smokes "a pack and a half a day". (Tr. 473). The exam was relatively benign, except that Plaintiff had some tenderness in the lower back with no pain or loss of range of motion (Tr. 474).

*Administrative Law Judge's Decision*

Upon consideration of the record in its entirety, the ALJ found that the Plaintiff met the disability insured status requirements of the Social Security Act effective March 16, 1991, the date the Plaintiff states he became unable to work and continued to meet them through June 30, 1991. (Tr. 369). He found that there was no evidence in the records that the Plaintiff has engaged in

substantial gainful activity since March 16, 1991. (Tr. 370). He found that the medical evidence establishes that the Plaintiff has severe impairments including, mild mental retardation and a history of peptic ulcer disease. (Tr. 370). However, these conditions, whether considered singly or in combination, do not meet or equal the requirements of an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ found the Plaintiff's claims during the period in question from March 15, 1991 through December 31, 1999, are not supported by objective clinical findings, opinions of treating and consultant sources, and the Plaintiff's own testimony to the degree of severity and functional limitations alleged. (Tr. 370). The ALJ found the Plaintiff retained the residual functional capacity to perform a wide range of work at all levels of exertion through December 31, 1999. (Tr. 370). He further found that the Plaintiff is able to perform his past relevant work as a construction worker, cement mason, cement mason apprentice , plasterer, and plasterer apprentice. (Tr. 370). These jobs were unskilled and skilled and required medium, heavy and very heavy exertion. (Tr. 370). Thus, the Plaintiff was found to be not disabled under the Social Security Act.

## THE STANDARD OF REVIEW

**A. Affirmance**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971). In evaluating whether a claimant is disabled, the ALJ must follow

the sequential inquiry described in the regulations[2]. See 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
  *Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
  *Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
  *Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
  *Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
  *Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B. Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair

8

record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and

9

probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994). With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[3] Id.

## DISCUSSION

The Plaintiff argues that the ALJ erred by: (1) not finding the Plaintiff disabled under the listing 12.05(B) or 12.05(C) as listed in 20 CFR Part 404, Subpart P. Appendix 1; (2) The ALJ erred in determining that the Plaintiff's mental retardation did not manifest itself before the age of twenty-two (22); (3) The ALJ improperly determined the Plaintiff could return to his past employment; and (4) the ALJ improperly discredited the Plaintiff due the Plaintiff's daily activities. The Commissioner's response asserts that the ALJ's determination the Plaintiff was not disabled prior to January 1, 2000, is supported by substantial evidence and thus the ALJ as finder of fact had solid grounds for finding that the Plaintiff's impairment would not prevent him from performing his past relevant work.

---

[3] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. **Id.** In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

### *(1) Whether the Plaintiff was Disabled Under the Listing 12.05(B) or 12.05(C) as Listed in 20 CFR Part 404, Subpart P. Appendix 1*

The Plaintiff's first argument states the ALJ erred by not determining that the Plaintiff was presumptively disabled pursuant to 12.05(B) and/or 12.05(C) as listed in 20 CFR Part 404, Subpart P. Appendix 1.

The Plaintiff asserts that the ALJ should have made a determination that the Plaintiff met the listings criteria pursuant to 12.05(B) & (C), and thus he should have found the Plaintiff presumptively disabled. The regulation reads in pertinent part:

> [m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> B. A valid verbal performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 CFR Part 404, Subpart P, Appendix 1, 12.05(B & C).

The earliest IQ testing presented by the Plaintiff was performed by Dr. Rosen in 1993, which showed the Plaintiff had a verbal functioning IQ of 68, a full performance score of 70, and a full scale function IQ of 68. (Tr. 550). In May of 1998, in a test conducted by Dr. Bruce J. Crowell, PhD. the Plaintiff had a verbal functioning IQ score of 54, a full performance IQ score of 65, and a full scale IQ score of 55. And finally, in May of 2000, Dr. Bruce G. Borkosky, Psy.D. stated the Plaintiff's IQ scores were 66 verbal, full performance IQ score of 68, and a full scale IQ score of

64. While Dr. Rosen stated the Plaintiff's alcohol abuse was in remission in 1993, both Dr. Crowell and Borkosky indicated that the Plaintiff was having problems with alcohol abuse which could affect the validity of the IQ test results. (Tr. 352, 353). Dr. Douglas Shadle, the medical expert called as a witness during the hearing, testified that although there was some inconsistency with the varying IQ test results, the Plaintiff did suffer from mild mental retardation. All of the test scores place the Plaintiff in the range to have a mild mental retardation.

Pursuant to 12.05(B), the Plaintiff is presumptively disabled if he has a verbal performance or a full scale performance IQ score of 59 or less. Dr. Crowell's test results showed the Plaintiff had a verbal performance IQ and full scale IQ of less than 59. However, Crowell's results conflict with Dr. Rosen's and Dr. Borkosky's which had a range of 60-70. Even Dr. Crowell himself stated the Plaintiff was less than forthright about his use of alcohol; which the record indicates is quite significant. (Tr. 353). Thus, the ALJ determined that 12.05(B) did not apply because the majority of the evidence favored a ruling that the Plaintiff had mild retardation.

While the Plaintiff disagrees with the ALJ's determination, it is the ALJ who is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527 (e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e). The ALJ articulated that the Plaintiff's past employment and daily routine indicated that he had a higher functioning IQ than that recorded by Dr. Crowell. In addition Dr. Crowell himself placed doubt on his findings. Thus, the ALJ properly determined, based upon the evidence before him, that Dr. Rosen and Dr. Borkosky's IQ scores were more in line

with the Plaintiff's actual mental capabilities. Thus, the ALJ correctly applied the terms of 12.05(B) to the Plaintiff's case and determined that the Plaintiff did not have a presumptively disabling mental impairment.

Regarding 12.05(C) the ALJ determined that the Plaintiff failed to present any evidence of an impairment when viewed in combination with his mental impairment which would create a significant limitation to his ability to work. (Tr. 67). In his decision, the ALJ articulated his position. The Plaintiff stated that in addition to his mental impairment, he suffered from peptic ulcer disease, shortness of breath, and black outs. The ALJ held:

> [T]he evidence does not support the severity of peptic ulcer disease alleged. The claimant was never hospitalized for this condition and only conservative treatment was prescribed. He did not report any adverse side effects from prescribed medication. Significantly, the claimant admitted to smoking quite a bit during the period in question even though his attorney contended that he had disabling shortness of breath. Prior to December 31, 1999, there is no evidence of an underlying medical impairment to support the claimant's symptoms of shortness of breath. He was not hospitalized or treated in any form for this complaint. As previously stated, there is no evidence of record, other that the claimant's own reports, of blackouts. A consultive examination disclosed no evidence of neurological deficits to support a seizure disorder or actual loss of consciousness. In fact, Dr. Mestas concluded that the claimant had only occasional orthostatic hypotension when squatting and standing up. (Tr. 368).

Thus, the ALJ concluded that the Plaintiff's contentions regarding his disability were not supported by the evidence in the record. (Tr. 367).

Where the Plaintiff does not provide the medical information necessary to enable the ALJ to make a determination regarding the alleged impairment, the ALJ will make a decision on the evidence presented. 20 CFR § 404.1516. Furthermore, while it is true the ALJ has a duty to develop the record, that does not relieve the Plaintiff of his burden of proving that he is disabled, and

consequently, the Plaintiff is responsible for producing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(c)). Since there was no medical evidence of a significant underlying impairment that combined with the Plaintiff's mental illness would create a disability, the ALJ properly determined that the Plaintiff failed to meet the requirements of 12.05 (C).

### *(2) Whether the ALJ Erred in Determining That the Plaintiff's Mental Retardation Did Not Manifest Itself Before the Age of Twenty-Two (22)*

The Plaintiff states that the ALJ erred in determining that the Plaintiff's mental impairment did not manifest before the Plaintiff turned twenty-two (22) years old. Indeed, the statute has a qualifier that the claimant present affirmative evidence that the mental disability manifested itself prior to the age of twenty-two (22). The Plaintiff argues from Hodges v. Barnhart, that absent some sudden trauma which can cause mental retardation an IQ test creates a rebuttable presumption of a fairly constant IQ through out the individual's entire life. 276 F.3d 1265, 1268-1269(11th Cir. 2001). In Hodges, the Eleventh Circuit remanded the case to the ALJ because the ALJ determined that even though the claimant met the listed requirements of 12.05(C), the claimant did not provide affirmative evidence of mental retardation prior to the age of twenty-two (22) and thus the ALJ denied the claimant benefits. Id. at 1269. The Eleventh Circuit held that a claimant need not present affirmative evidence of a mental impairment prior to the age of twenty-two (22) if the claimant presented evidence of a mental impairment after the age of twenty-two (22). 276 F.3d 1265, 1266 (11th Cir. 2001).

In contrast to the ALJ in Hodges, the ALJ in this instance acknowledged the regulations' age limit but performed the analysis for both 12.05(B) and 12.05(C), and determined that the Plaintiff

did not meet the requirements of either regulation. (Tr. 370). Thus, the Plaintiff's argument lacks merit because the ALJ did not rely on the regulations age limitation to deny the Plaintiff's claim.

*(3) Whether the ALJ Improperly Determined the Plaintiff Could Return to His Past Employment*

The Plaintiff asserts that the ALJ merely relied on his own opinion rather than the medical record to determine that the Plaintiff had the residual functional capacity to return to his previous employment. The Plaintiff continues that he met the listed impairment of 12.05(B) and 12.05(C), and, therefore, he should be presumed disabled without regard to his age, education or work experience.

In contrast to the Plaintiff's allegations, the ALJ developed a full record and articulated substantial reasons at to why he did not find the Plaintiff's complaint as fully credible. *See* Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (holding that the ALJ did not have to provide a specific phases or formulations to determine a credibility finding as long as the implication was obvious to the reviewing court). In making his determination the ALJ applied the Eleventh Circuit's pain credibility standard as a guideline for making his credibility determination regarding the Plaintiff's claims in this case. (Tr. 367). The credibility standard requires the Plaintiff to establish evidence of an underlying medical condition and (a) either objective medical evidence that confirms the severity of the alleged symptom arising from that condition or (b) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged symptom. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ determined that while there was a presumptive medical condition, the Plaintiff's mental impairment, he found that the impairment did not meet the standards for 12.05(B) and that there were no other conditions to satisfy the second prong of the regulation required in 12.05(C). (Tr. 367) There was simply no medical

evidence in the record to support the Plaintiff's claims. (Tr. 367).

In making his determination, the ALJ cited the Plaintiff's demeanor at the hearing, the Plaintiff's range of daily activities in caring for a large and extended family, the Plaintiff's testimony contradicted the medical evidence, and the Plaintiff's financial interest in the outcome. (Tr. 369). In addition, the ALJ relied on the testimony of a medical and vocational expert who each testified at the hearing.

The ALJ also noted a lack of clinical or laboratory findings, hospitalization, ongoing treatments and/or statements from treating physicians stating that the Plaintiff had a physical impairment that in combination with his mental impairments would cause him to be presumptively disabled. (Tr. 368). Even the Plaintiff's own attorney acknowledged at the hearing that the Plaintiff's claimed peptic ulcer disease was not sufficient to create the presumption of disability when combined with his mental impairments. (Tr. 554). The Plaintiff did not report taking any medications on a continual basis since alleged onset date of March 16, 1991. The ALJ further noted that the Plaintiff was able to perform a skilled occupation on sustained basis for a significant period of time. (Tr. 368).

Dr. Douglas Shadle, the independent medical examiner, testified at the hearing that was some question about the validity of the of the history provided by the Plaintiff. (Tr. 548). The ALJ noted that Dr. Shadle opined the Plaintiff had no evidence of brain damage and that the Plaintiff's IQ scores were fairly consistent and within the range of mild mental retardation. (Tr. 365).

The ALJ also presented the following hypothetical question to Joyce Ryan the vocational expert testifying at the trial.

> Whether a person with the same age, education and vocational

> profile as the claimant with the residual functional capacity for a wide range of work limited only by mild mental retardation and occasional abdominal discomfort secondary to peptic ulcer disease, could perform the claimant's past relevant work or any occupations existing in the national economy. (Tr. 369).

The vocational expert testified that such an individual could perform the Plaintiff's past relevant work as a construction worker, cement mason, cement mason apprentice, plasterer, and plasterer apprentice. (Tr. 369).

The ALJ held that since the record and the vocational expert's testimony supported a conclusion that the Plaintiff could return to his past relevant work that a finding of not disabled was appropriate between March 16, 1991, and December 31, 1999. (Tr. 369). Thus, the ALJ supported his decision with substantial evidence from the record and if the ALJ's decision is supported by substantial evidence from the record as a whole, the Court will not disturbed the decision. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

*(4) Whether the ALJ Improperly Discredited the Plaintiff Due the Plaintiff's Daily Activities*

The Plaintiff states the ALJ erred by improperly discrediting the Plaintiff based upon the Plaintiff's daily activities and the fact that he could drive. However, the ALJ did not use the Plaintiff's daily activities to determine whether or not the Plaintiff was presumptively disabled, but instead, used the daily activities to test the Plaintiff's credibility.

The ALJ noted in his decision that he did not find the claim that the Plaintiff did not do house work or go grocery shopping credible given the size of the Plaintiff's household and the fact that Plaintiff's wife was receiving disability benefits. (Tr. 368). In addition, the ALJ noted the Plaintiff could drive his truck, and in fact drove himself to the hearing. While the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can

17

be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. *See* Moore v. Barnhart, — F.3d—, 2005 WL 831674 (11th Cir. April 12, 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise).  Thus, the Plaintiff's use of the Defendant's daily routine and activities was proper and the Plaintiff's argument fails for lack of merit.

Consequently based upon the record, the ALJ's decision, and the analysis above, the Court respectfully recommends that the decision of the ALJ should be affirmed.

Accordingly it is hereby

**RECOMMENDED:**

The ALJ's decision that the Plaintiff, James E. Wilbon, was not under a disability within the meaning of the Social Security Act at any time from March 16, 1991 through December 31, 1999, should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this __18th__ day of May, 2005.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record